(No. 17407.—Decree affirmed.)
OLA BUSHMAN *et al.* Appellants, *vs.* LORENZO D. FRASER
*et al.* Appellees.

*Opinion filed October 28, 1926.*

1. WILLS—*when "surviving heirs" will be construed to mean surviving children.* Where a testator, after giving all his property to his wife, provides that after her death "my then serviving ayers shall share equal according to my receipts," the word "ayers" must be construed to mean children, where the receipts referred to were given for advancements made to the children in the testator's lifetime; and where it does not appear that there were any grandchildren when the will was made nor that any advancements were made to them they will not be included as sharing in the gift over on the death of the widow.

2. SAME—*general rule as to when "heirs" will be construed to mean "children."* The word "heirs" must usually be construed in a will in its technical sense, as meaning those who in case of intestacy would succeed to the inheritance, but where the context clearly shows that the testator used the word as meaning children or grandchildren it must be given that meaning.

3. SAME—*"children" will not be construed to mean grandchildren in absence of such intention.* The word "children" denotes immediate offspring, and will not be construed to include grandchildren unless there is something in the context which clearly manifests the testator's intention to give it such meaning.

4. SAME—*intention expressed in will must be given effect.* The intention of the testator must be ascertained from the words of his will, and effect must be given to the intention expressed by those words and not to some other intention which from surrounding circumstances the testator may be presumed to have had but did not express.

5. SAME—*when remainder to surviving children is contingent.* Where a testator gives all his property to his wife and provides that after her death his "then serviving ayers shall share equal," and the circumstances require that the term "ayers" be construed to mean children, the remainder is contingent and only those children who survive the life tenant are entitled to share in the estate, and grandchildren whose parents do not survive the life tenant have no interest.

6. SAME—*when gift to survivors includes only those who survive particular estate.* A gift to survivors, if preceded by a particular estate, at the expiration of which the gift is to take .effect in possession, will take effect in favor of those, only, who survive the particular estate.

APPEAL from the Circuit Court of Whiteside county; the Hon. C. J. SEARLE, Judge, presiding.

J. J. LUDENS, for appellants.

JACOB CANTLIN, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

William P. Fraser, a resident of the county of Whiteside, died in the year 1896, having previously, on June 30 of that year, executed his will in the following words:

"In the name of God, Amen.

"W. P. Fraser, of Coleta, in the county of Whiteside, and State of Illinois, being of sound mind and memory and realizing the uncertainty of this frail and ............ life, do therefore make, ordain, publish and declare this to be my last will and testament.

"1st. I order and direct that my executor, hereinafter named, pay all my just debts and funeral expenses as soon after my decease as conveniently may be.

"2d. After the payment of such funeral expenses and debts, I give, devise and bequeath to my wife, Maryan Fraser all my realestate consisting of my home farm house and lot situated in the vilidge of Coleta 22 acres timber land in Clide township 6 acres situated in Genesee township. I also will and direct that my wife Maryan shall have all my personal property moneys and credits after the decease of my wife I will and direct that my then serviving ayers shall share equal according to my receipts. I also direct that after the decease of my wife Maryan all my realestate be equally divided among my then serviving children and incase such devision can not be made it shall then be sold by my executor and the proceeds equally devided among them.

"I appoint my son Renco D. Fraser as my executor of this my last will.

"Lastly I make, constitute and appoint................to be executor of this my last will and testament hereby revoking all former wills by me made.

"In witness whereof I have hereto subscribed my name and affixed my seal this 30th day of June in the year of our Lord one thousand eight hundred and ninety-six."

He was survived by his widow, Mary Ann Fraser, and his six children: Elma Linerode, Hattie Miller, Estella Wick, John C. Fraser, Lorenzo D. Fraser and Fred Fraser. He had made certain advancements to all his children except Fred, as follows: To John, $1500; to Lorenzo, $1000; to Hattie Miller, $900; to Elma Linerode, $600; and to Estella Wick, $400. He owned at the time of his death the west half of the northeast quarter of section 29, township 22, north, range 6, east of the fourth principal meridian, in Whiteside county. The will was admitted to probate, the estate was settled in the county court of Whiteside county in the year 1899, the debts were paid, and the receipts of the testator's children who had received advancements, showing that they had received the amounts stated, were filed in the county court. John died intestate on March 13, 1915, leaving his children, Ora Fraser Graham, Milford O. Fraser, Charles A. Fraser, Vernon L. Fraser and Floyd L. Fraser, surviving. Hattie died intestate in 1922, leaving her children, Nina Miller and Lena Blaeuer, surviving. Elma Linerode died intestate on January 23, 1924, leaving Ola Bushman her sole heir. In February, 1902, Mary Ann Fraser purchased the north forty-five feet of lot 8, in block 3, west of Broadway, in the city of Sterling, of Michael Grove and Sadie Grove, his wife, who executed a warranty deed conveying the property to Mary "for and during the period of her natural life and then in fee forever to the surviving children of William P. Fraser in equal parts between them." She died intestate on December 12, 1924, her heirs being the three surviving children of William,—Lorenzo D. Fraser, Fred Fraser and Estella Wick,—and the eight grandchildren who have been named. At the April term, 1925, the eight grandchildren filed their bill in the circuit court of Whiteside county against the three surviving children of William P. and Mary Ann Fraser for the partition of the eighty acres of land and the lot in the city of Sterling, alleging the foregoing

facts and averring that Lorenzo D. Fraser, Estella Wick and Fred Fraser are entitled each to an undivided one-sixth interest in the premises, and that the complainants are entitled, as heirs, respectively, of their deceased parents, to the following proportions: Ola Bushman one-sixth interest, Nina Miller and Lena Blaeuer each one-twelfth interest, and Ora Fraser Graham, Milford O. Fraser, Charles A. Fraser, Vernon L. Fraser and Floyd L. Fraser each one-thirtieth interest. The defendants filed a demurrer to the bill, which the court sustained, and the bill was dismissed for want of equity. From that decree the complainants have appealed.

The complainants contend that under the proper construction of the will the children of the testator took vested remainders expectant on the termination of their mother's life estate, and that the remainders of those children who have died have descended to complainants as their respective heirs. The record does not disclose whether or not any grandchildren were in existence at the time of the execution of the will. If there were any, they would not have been heirs of the testator if he had then died.

The entire disposition of the testator's property is contained in three sentences of the second paragraph of his will, by the first of which he devises all his real estate to his wife in terms which would convey a fee simple if not limited by other language in the will. By the second sentence he bequeaths in its first clause all his personal property to his wife, but the bequest is qualified by the subsequent clause, which directs that after his wife's death his then surviving heirs shall share equally according to his receipts.

Counsel for the appellants urges that in order to read the will intelligently a period should be placed after the word "credits" in the second sentence, and that advancements having been made by the deceased to each of his children except one, the testator intended that after the

death of his wife his property was to be divided equally among his children then surviving and his grandchildren whose parents had died, such grandchildren taking their respective parents' shares, subject to the deduction of any advancement made to their parents. It adds nothing to the clarity of the will to make two sentences out of this second sentence, and we do not regard the punctuation as important in arriving at the meaning of the language. Whether a period, comma or other punctuation mark is inserted or not, the language means that after the death of the testator's wife the advances should be deducted, respectively, from the equal shares into which he directed his property to be divided.

The questions to be determined are who shall "share equal" and what they shall share. The third sentence of the will provides for the equal division of the real estate upon the death of the widow, and, in case such division cannot be made, directs a sale by the executor and the division of the proceeds. It seems clear that the direction contained in the second sentence, that the surviving heirs shall share equally after the death of the widow, applies to all the property which has been previously disposed of. By the first two sentences the testator disposed of his whole estate by giving it to his wife, and the last clause of the second sentence indicates his intention that after her death the whole of his property shall vest in the persons whom he describes by the term "then serviving ayers," sharing equally according to his receipts. The surviving heirs whom he had in mind were those from some of whom he then held receipts for advancements made to them, which he intended to charge against their respective shares, and the language could have applied to none other than his children. It does not appear that he then had any grandchildren, or if he had any that he had made any advancements to them, and it is highly improbable that he contemplated, in making his will, advancements made or to be made to

any of his descendants other than his children. Having made advancements in different amounts to some of his children, and having provided for the equal division of all his property among his heirs according to the advancements which he had made to them, he must have intended that his property should be divided among the class which included those who had received advancements,—that is, his children. The surviving heirs were therefore the surviving children. If the word "ayers" were given the technical meaning of "heirs," the heirs of the testator at the death of the widow (the time for distribution) were the three living children and eight grandchildren, and each would be entitled to one-eleventh of the estate,—the grandchildren equally with the children,—and the grandchildren having received no advancement, their shares would not be reduced but the shares of the children who had received advancements would be diminished according to the amount received. Such a distribution could not have been in the mind of the testator when he directed that his surviving heirs should share equally according to his receipts. While the word "heirs" must usually be construed in a will in its technical sense, as meaning those who would in case of intestacy succeed to the inheritance, yet where the context clearly shows that the testator used the word as meaning children or grandchildren, it must be given that meaning according to his intention. *Griswold* v. *Hicks,* 132 Ill. 494; *Bradsby* v. *Wallace,* 202 id. 239; *Dunshee* v. *Dunshee,* 251 id. 405; *Morris* v. *Phillips,* 287 id. 633.

The third sentence makes it entirely clear that so far as the real estate was concerned only children were to share in the division or distribution of the proceeds in case of a sale. Though it is clear from the context that the testator used the word "heirs" in the restricted meaning of children, it does not follow that he intended to use the word "children" with the broader meaning of "heirs." The word "children" denotes immediate offspring, and will not be

construed to include grandchildren unless there is something in the context which clearly manifests the testator's intention to give it such meaning. (*Arnold* v. *Alden* 173 Ill. 229.) The intention of the testator must be ascertained from the words of his will, and effect must be given to the intention expressed by those words and not to some other intention which from surrounding circumstances he may be presumed to have had but has not expressed. (*Engelthaler* v. *Engelthaler,* 196 Ill. 230; *Bond* v. *Moore,* 236 id. 576.) The intention expressed by the language of this will is to devise the testator's property to his wife for life with remainder after her death to their children who were then living, in fee. Such remainder was contingent, because until the death of the mother it could not be known which of the children would survive her and be entitled to share in the estate. A gift to survivors, if preceded by a particular estate, at the expiration of which the gift is to take effect in possession, will take effect in favor of those, only, who survive the particular estate. (*Ridgeway* v. *Underwood,* 67 Ill. 419; *Blatchford* v. *Newberry,* 99 id. 11; *Schuknecht* v. *Schultz,* 212 id. 43; *Burlet* v. *Burlet,* 246 id. 563; *Bender* v. *Bender,* 292 id. 358.) If the testator had had in mind a distribution of his estate twenty-eight years after his death, when three of his six children would have died leaving children, he would perhaps have provided for a different division from that made in his will, but we have no authority to provide for a condition which he did not foresee.

The terms of the deed to the lot are the same, in effect, as the devise of the land. The conveyance is to Mary A. Fraser "for and during the period of her natural life and then in fee forever to the surviving children of William P. Fraser in equal parts between them," and is subject to the same rule that a gift to survivors, to take effect in possession at the expiration of a precedent particular estate, will

take effect in favor of those, only, who survive the particular estate.

The appellants have no interest in the real estate involved in this proceeding, and the decree of the circuit court sustaining the demurrer and dismissing the bill for want of equity is right. It is therefore affirmed.

*Decree affirmed.*